[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 31, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-11304
Non-Argument Calendar

_____

BIA Nos. A79-469-926 & A79-469-927

PATRICIA RODRIGUEZ,
CLAUDIA PATRICIA FUENTES,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

**(August 31, 2005)**

Before ANDERSON, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Patricia Rodriguez and her daughter, Claudia Patricia Fuentes, petition for review of the Board of Immigration Appeals' (BIA's) order affirming the Immigration Judge's (IJ's) denial of asylum, withholding of removal under the Immigration and Naturalization Act (INA), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c).[1] We deny the petition.

Petitioners assert the IJ erred in finding petitioners failed to establish a well-founded fear of persecution based on Rodriguez's imputed political opinion sufficient to grant them withholding of removal. This claim is largely based on Rodriguez's encounter with the Revolutionary Armed Forces of Colombia (FARC), during which she was stopped at a roadblock, made to lie face-down at gunpoint, and threatened with death. Petitioners contend there is substantial evidence in the record to show Rodriguez suffered past persecution based on her charity work for the poor and, thus, it is more likely than not she will suffer future persecution. Further, petitioners maintain upon return to Colombia, the FARC will remember Rodriguez's activities, and, therefore, Rodriguez's fear that she will suffer future persecution is well-founded.

---

[1] Because petitioners' removal proceedings commenced after April 1, 1997, the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) (IIRIRA), apply.

2

Because the BIA adopted and affirmed the IJ's decision without an opinion, we review the IJ's decision as if it were the BIA's. *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the IJ's factual determinations under the substantial evidence test, and we "must affirm the [IJ]'s decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar*, 257 F.3d at 1283-84 (quotation and citation omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." *Mendoza v. U.S. Attorney Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

As an initial matter, petitioners seek review only of the IJ's decision denying withholding of removal under the INA. The IJ found petitioners' asylum claim was pretermitted due to untimeliness. We lack jurisdiction to review the IJ's determination that an asylum application was untimely filed. *See Sanchez v. U.S. Attorney Gen.*, 392 F.3d 434, 437 (11th Cir. 2004). Moreover, petitioners do not seek review of that decision. Further, petitioners abandoned their CAT relief claim by not raising it in their brief. *See Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998) (concluding issues not argued in a party's brief are abandoned).

In a withholding of removal claim, an alien shall not be removed to a country if her "life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political

3

opinion." 8 U.S.C. § 1231(b)(3). "An alien bears the burden of demonstrating that [s]he more-likely-than-not would be persecuted or tortured" upon return to the proposed country of removal. *Sanchez*, 392 F.3d at 437. A presumption the alien's life or freedom would be threatened upon return to the proposed country of removal is created if the alien establishes past persecution on a protected ground. *Id.* This presumption may be rebutted if the INS shows the alien's life or freedom are no longer threatened because of changed conditions in the proposed country of removal, or the alien would avoid persecution by relocating to another part of the proposed country of removal. *Id.* Where the alien has not actually suffered past persecution, she bears the burden of establishing it is more likely than not she would suffer future persecution upon removal. *Id.* However, as with past persecution, "[a]n alien cannot demonstrate that [she] more-likely-than-not would be persecuted on a protected ground if the IJ finds that the alien could avoid a future threat by relocating to another part of [her] country." *Id.* (citation omitted).

Substantial evidence supports the BIA's decision that petitioners were not entitled to withholding of removal under the INA. First, petitioners did not demonstrate past persecution on a protected ground because their applications, and Rodriguez's testimony, failed to establish a sufficient nexus between Rodriguez's detention by the FARC and her claimed imputed political opinion, namely, her charitable work in opposition of the FARC's mission. As the IJ noted, the only

4

significant tie Rodriguez demonstrated between her charitable work and persecution by the FARC is the statement made by the FARC indicating she must be executed because she is a sister of charity. With the exception of Rodriguez's father-in-law and Mr. Lizardo, the record does not show that any other members of Rodriguez's charitable groups were persecuted by the FARC due to their activities. Rodriguez stated Mr. Lizardo was "a supporter of [her] food program" and was kidnaped by the FARC. However, there is no evidence Mr. Lizardo was persecuted because of his involvement with Rodriguez's charitable work.

With respect to the kidnaping of Rodriguez's father-in-law, Rodriguez's testimony reveals he was kidnaped because his medical skills were of use to the guerrillas, not because he was involved in charitable work. Rodriguez admitted to participating in "social services" with her father-in-law during two instances on which he was kidnaped. It is noteworthy that, if Rodriguez was on a FARC blacklist, the guerrillas did not attempt to kidnap or harm her during these instances. Moreover, Rodriguez testified she did not experience problems with the FARC either before or after the roadblock encounter. Therefore, the IJ's decision that petitioners failed to establish a nexus between Rodriguez's charitable work and persecution by the FARC is supported by substantial evidence. Accordingly, petitioners did not demonstrate past persecution on a protected ground. *See Sanchez*, 392 F.3d at 437.

Second, petitioners failed to establish it is more likely than not they will suffer persecution upon removal. *See id.* Again, the lack of evidence in the record demonstrating the FARC targeted Rodriguez before or after the roadblock encounter is significant because it indicates Rodriguez is not a target of the FARC, but was merely the victim of a random roadblock. Additionally, Rodriguez stated members of her family had always helped indigenous and displaced people and her mother and brothers have safely lived in Colombia since Rodriguez's encounter with the FARC. As such, petitioners have not demonstrated it is more likely than not that they will face persecution upon return to Colombia. *See* 8 C.F.R. § 208.16(b)(2). Accordingly, we deny the petition.

**PETITION DENIED.**